**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| EXXON MOBIL CORPORATION; EXXONMOBIL DEVELOPMENT COMPANY; and EXXONMOBIL OIL CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>STEVEN MNUCHIN, in his official capacity as Secretary of the U.S. Department of Treasury; JOHN E. SMITH, in his official capacity as the Director of the U.S. Department of Treasury's Office of Foreign Assets Control; and the U.S. DEPARTMENT OF TREASURY'S OFFICE OF FOREIGN ASSETS CONTROL,<br><br>　　　　　Defendants. | Action No. 3:17-cv-1930-B<br>The Honorable Jane Boyle<br>Magistrate Judge Renee Harris Toliver |

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL</u>**
**<u>COMPLETION OF THE ADMINISTRATIVE RECORD</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

A.    Plaintiffs' violations of the Ukraine Related Sanctions Regulations................................... 3

B.    OFAC's civil penalty process ........................................................................................ 4

C.    Procedural history ...................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

A.    Privileged materials are not part of the AR .................................................................... 8

B.    The certified Administrative Record is complete ............................................................ 13

    1.    Documents reflecting OFAC's interpretation of the URSR ................................ 14

    2.    Documents reflecting OFAC's understanding of White House press
        statements........................................................................................................ 17

    3.    Documents reflecting OFAC's policy on cross-sanctions guidance.................... 18

C.    OFAC is not required to produce a privilege log............................................................ 20

CONCLUSION...................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Alaska Dep't of Envtl. Conservation v. EPA*,
   540 U.S. 461 (2004) .......................................................................................... 20

*Am. Petroleum Tankers Parent, LLC v. United States*,
   952 F. Supp. 2d 252 (D.D.C. 2013) ................................................................ 21

*Bar MK Ranches v. Yeutter*,
   994 F.2d 735 (10th Cir. 1993) ......................................................................... 13

*Blue Ocean Inst. v. Gutierrez*,
   503 F. Supp. 2d 366 (D.D.C. 2007) ................................................................ 21

*California v. U.S. Dep't of Labor*,
   2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) ................................................. 21

*Chekcosky v. SEC*,
   23 F.3d 452 (D.C. Cir. 1994) ..................................................................... 10, 20

*Citizens to Pres. Overton Park v. Volpe*,
   401 U.S. 402 (1971) ..................................................................................... 9, 10

*City of Dallas v. Hall*,
   Civil Action Nos. 3:07-cv-0060-P; 3:07-cv-0213-P, 2007 WL 3257188
   (N.D. Tex. Oct. 29, 2007) ................................................................................ 14

*Dist. Hosp. Partners, L.P. v. Sebelius*,
   971 F.Supp.2d 15 (D.D.C. 2013), *aff'd*, 786 F.3d 46 (D.C. Cir. 2015) ................................... 21

*Exxon Corp. v. Department of Energy*,
   91 F.R.D. 26 (N.D. Tex. 1981) ........................................................................ 22

*Great Am. Ins. Co. v. United States*,
   No. 12 C 9718, 2013 WL 4506929 (N.D. Ill. Aug. 23, 2013) ........................ 22

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) ......................................................................... 9

*In re United States*,
   138 S. Ct. 443 (2017) ....................................................................................... 23

*Inst. for Fisheries Res. v. Burwell*,
   No. 16-cv-01547, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ........................ 23

*Morgan v. United States*,
   304 U.S. 1 (1938), *rehearing denied*, 304 U.S. 1 (1938) ................................. 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................ 2, 9, 11, 18

*Nat'l Archives and Records Admin. v. Favish*,
   541 U.S. 157 (2004), *rehearing denied*, 541 U.S 1057 (2004) ................................. 14

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ............................................................................ 9

*Norris & Hirshberg, Inc. v. SEC*,
   163 F.2d 689 (D.C. Cir. 1947) ............................................................ 21

*Oceana, Inc. v. Locke*,
   634 F. Supp. 2d 49 (D.D.C. 2009), *rev'd on other grounds*,
   670 F.3d 1238 (D.C. Cir. 2011) .......................................................... 21

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*,
   789 F.2d 26 (D.C. Cir. 1986) ............................................................. 10

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ............................................................................ 10

*Tafas v. Dudas*,
   530 F. Supp. 2d 786 (E.D. Va. 2008) .............................................. 9, 14, 22

*Tex. Steel Co. v. Donovan*,
   93 F.R.D. 619 (N.D. Tex. 1982) ...................................................... 22, 23

*Thompson v. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) ............................................................. 8

*United States v. Morgan*,
   313 U.S. 409 (1941) .......................................................................... 9

**STATUTES**

5 U.S.C. § 556 ...................................................................................... 8

5 U.S.C. § 704 ...................................................................................... 5

5 U.S.C. § 706 ...................................................................................... 7

**RULES**

Fed. R. App. P. 16 ................................................................................ 10

**REGULATIONS**

31 C.F.R. Part 501, App. A .............................................................. 4, 5, 16

31 C.F.R. § 589.101 ................................................................................................................ 18, 19

31 C.F.R. § 589.201 ...................................................................................................................... 3

31 C.F.R. § 589.308 ...................................................................................................................... 3

Blocking Property of Certain Persons Contributing to the Situation in Ukraine,
    Exec. Order No. 13,660, 79 Fed. Reg. 13,493 (Mar. 10, 2014) .................................................. 3

Blocking Property of Additional Persons Contributing to the Situation in Ukraine,
    Exec. Order No. 13,661, 79 Fed. Reg. 15,535 (Mar. 16, 2014) ............................................. 3, 12

**INTRODUCTION**

Following the Russian Federation's invasion of eastern Ukraine in 2014, the United States took a series of measures under a Presidentially-declared national emergency designed to sanction certain individuals and entities who were deemed to be responsible for the invasion, who otherwise threatened the peace, security, and stability of the region, or who misappropriated Ukrainian assets.  As part of this effort, Defendants, the U.S. Department of the Treasury's Office of Foreign Assets Control and two predecessors to the Treasury officials named in their official capacities (collectively, "OFAC"), designated certain Russian government officials to be sanctioned, blocking their property and interests in property and prohibiting U.S. persons from engaging in any sort of transaction with them generally.  Shortly thereafter, Plaintiffs, Exxon Mobil Corporation, ExxonMobil Development Company, and ExxonMobil Oil Corporation (collectively, "Plaintiffs'), executed a series of documents with a Russian oil company where the documents were countersigned by a designated individual, Igor Sechin, who reportedly has close ties to Russian President Vladimir Putin.  OFAC undertook an analysis of these transactions and, following a lengthy administrative process that spanned more than three years, and that involved extensive collection of materials from Plaintiffs and significant back-and-forth between OFAC and Plaintiffs (including written correspondence and in-person meetings), OFAC issued a final monetary penalty to Plaintiffs.  Plaintiffs then brought the instant case, challenging OFAC's decision on various grounds under the Administrative Procedure Act ("APA").  In accordance with its obligations in an APA case, OFAC has compiled and certified a 23,000-page Administrative Record ("AR") consisting of all of the non-privileged materials it considered, directly or indirectly, in reaching its final decision to issue a penalty to Plaintiffs.

Plaintiffs have moved for an order to "compel the completion" of the AR, asserting that the record must include privileged documents or, in the alternative, that OFAC must provide a log of privileged materials.  Neither contention is true.  As in any case challenging the final action of an agency under the APA, any evaluation as to whether OFAC's issuance of a penalty is legal must be based on the agency's own stated reasons for its decision.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 50 (1983).  Here, OFAC justified its decision to issue a penalty in two final decisional memoranda that both explain the basis for the agency's decision and respond to arguments made by Plaintiffs during the course of the administrative proceeding.  As multiple courts have held, privileged information, including deliberative materials such as draft documents and internal discussions, are not reflective of the agency's final position and thus neither need to be included in an administrative record nor accounted for in a privilege log.

Also without merit is Plaintiffs' contention that the AR is incomplete.  Plaintiffs surmise, based on their disagreement with OFAC's decision to penalize their conduct, that certain documents must exist that explain certain aspects of OFAC's reasoning behind its decision.  Plaintiffs have not pointed to any non-speculative, specific evidence that such non-privileged documents exist and were considered by OFAC.  Moreover, to the extent this is true, and such documents were not already made part of the AR, those documents are privileged, would not go to OFAC's articulated basis for this action (upon which this APA challenge must rise or fall), and therefore need not be included.  Finally, Plaintiffs' motion misunderstands the nature of OFAC's civil penalty process and overlooks the fact that the reasoning they contend is lacking is in fact already contained in OFAC's decisional memorandum.  For all of these reasons, Plaintiffs' motion should be denied.

## BACKGROUND

**A.     Plaintiffs' violations of the Ukraine Related Sanctions Regulations**

On March 6, 2014, President Obama issued Executive Order 13,660, declaring a national emergency to deal with the unusual and extraordinary threat to the national security and foreign policy of the United States posed by incursions into and disruptions in Ukraine.  *See* Executive Order 13,660, Blocking Property of Certain Persons Contributing to the Situation in Ukraine, 79 Fed. Reg. 13,493 (Mar. 10, 2014).  Further to that national emergency, on March 16, 2014, President Obama issued Executive Order 13,661, which, among other things, granted the Secretary of the Treasury, in consultation with the Secretary of State, the authority to designate officials of the Russian Government and to block any property and interests in property and prohibited any dealings with persons so designated.  *See* Blocking Property of Additional Persons Contributing to the Situation in the Ukraine, Exec. Order No. 13,661, 79 Fed. Reg. 15,535 (Mar. 16, 2014).  The Executive Order expressly states that U.S. persons are prohibited from "the receipt of any contribution or provision of funds, goods, or services from any such person."  *Id*. § 4(b).  Pursuant to the Executive Order, on April 28, 2014, OFAC designated Igor Sechin, the President of OAO Rosneft Oil Company ("Rosneft") to the Department of the Treasury's Specially Designated Nationals and Blocked Persons list.  *See* Compl. ¶ 37.  Shortly thereafter, on May 8, 2014, OFAC issued the Ukraine Related Sanctions Regulations ("URSR") clarifying that U.S. persons were prohibited from dealing with designated persons (including Sechin) or benefitting from any service he might provide.  *See* 31 C.F.R. §§ 589.201, 589.308 (latter defining "property and property in interest" to include "services of any nature whatsoever, contracts of any nature whatsoever, and any other property, real, personal, or mixed, tangible, or intangible, or interest or interests therein, present, future, or contingent").

3

Despite the plain language of both the Executive Order and the URSR broadly prohibiting U.S. persons from dealing with designated persons, Plaintiffs did just that.  On May 14 and May 23, 2014, Plaintiffs executed documents pertaining to an amendment of a liquefied natural gas agreement as well as seven completion deeds with Rosneft.  *See* Compl. Ex. A (July 20, 2017 Penalty Notice from OFAC to Plaintiffs) at 1.  Because those documents were countersigned by Sechin on behalf of Rosneft, OFAC alleged—and later concluded—that Plaintiffs' conduct violated the URSR by dealing in the services of a designated person and warranted a civil penalty.  *Id*.

## B.    OFAC's civil penalty process

All civil penalties issued by OFAC, including the one issued to Plaintiffs, follow the same process that is set forth in the agency's regulations.  OFAC begins by reviewing "the facts and circumstances surrounding an apparent violation" and also applies general factors that pertain to all of its administrative actions to determine whether to initiate a civil penalty proceeding.  31 C.F.R. Part 501, App. A(V).  If, following review of the facts and circumstances collected by OFAC, OFAC has reason to believe that a sanctions violation has occurred and believes that a civil monetary penalty is appropriate, it will issue a Pre-Penalty Notice.  *Id*. App. A(V)(A).  That document includes a description of the alleged violations as well as a calculation of a proposed penalty amount.  *Id*.  An individual or entity in receipt of a Pre-Penalty Notice has the opportunity to submit a written response and may agree to the proposed penalty or provide reasons for why no penalty should be imposed or why a lesser amount is warranted.  *Id*. App. A(V)(A)(b)(2).  The response to a Pre-Penalty Notice "should include all documentary or other evidence available to the Subject Person that supports the arguments set forth in the response," and OFAC will consider all relevant materials submitted in taking further action.  *Id*.  If, upon

4

review of the information and evidence submitted in response, OFAC concludes that a penalty is still warranted, the agency will issue a Penalty Notice. *Id*. App. A(V)(A)(b)(3). The Penalty Notice responds to the information and evidence submitted in response to a Pre-Penalty Notice and will also determine the appropriate amount for the penalty. *Id*. Because the Penalty Notice constitutes a final agency action, *see id.* App. A(V)(A)(b)(5), it may be challenged in court pursuant to the APA, *see* 5 U.S.C. § 704 (giving jurisdiction to federal courts to hear challenges to "final agency action for which there is no other adequate remedy").

OFAC followed these steps to issue the Penalty Notice being challenged in this case. Following Plaintiffs' execution of the agreement and deeds with Sechin, OFAC engaged in a fact-gathering process about the transactions. This fact-gathering included the issuance of an administrative subpoena to Plaintiffs for information related to execution of the documents.[1] *See* Compl. ¶¶ 47-48. In June 2015, OFAC issued a Pre-Penalty Notice, informing Plaintiffs of its belief that the execution of the documents with Sechin violated the URSR because they constituted dealing in the blocked services of a designated person. *Id*. ¶ 53. OFAC proposed a $2,000,000 penalty for Plaintiffs' conduct. *See id*. Ex. A at 1. In August 2015, Plaintiffs responded by letter to the Pre-Penalty Notice and submitted supplemental written responses on five occasions between October 2016 and July 2017. *Id*. at 1-2. Plaintiffs also met with, and provided presentations to, OFAC officials on three occasions between September 2016 and July 2017, and submitted two letters to the Under Secretary for Terrorism and Financial Intelligence

---

[1] Although Plaintiffs provided OFAC with a voluminous amount of information in response to the subpoena, they refused throughout the civil penalty process to provide any documentation to support their assertion that their conduct was not reckless because they retained legal counsel to advise them on the legality of executing the documents with Sechin prior to those transactions taking place. *See* Compl. Ex. A at 6. Notably, Plaintiffs withheld this information from OFAC on the basis of privilege. *Id*.

in June 2017.  *Id.* at 2.  Collectively, Plaintiffs made ten arguments to OFAC as to why a Penalty

Notice should not issue, including a claim that Sechin was designated in his individual capacity

only and that Plaintiffs were free to do business with him in his professional capacity as

President of Rosneft.  *Id.*

On July 20, 2017, OFAC issued a Penalty Notice to Plaintiffs and concluded that the

$2,000,000 penalty was warranted.  *See generally id.*  The Penalty Notice is a 10-page, single-

spaced document which contains a point-by-point response to all ten arguments Plaintiffs raised

in their various responses to the Pre-Penalty Notice.  *Id.*  OFAC's decision is further

memorialized in a 30-page, single-spaced Analysis Memorandum, plus attachments, containing a

more detailed response to the arguments raised by Plaintiffs.  Both documents thus set forth

OFAC's stated basis for the Penalty Notice and both were included in the AR certified by OFAC

on November 17, 2017.[2]  *See* Admin. R. Index at 1, ECF No. 22-2.

## C.    Procedural history

Plaintiffs filed their complaint in this case on July 20, 2017, hours after OFAC issued the

Penalty Notice.  *See generally* Compl.  The complaint raises many of the same arguments

Plaintiffs made to OFAC during the civil penalty process, including Plaintiffs' contention that

they were not precluded from doing business with Sechin in his official capacity as an officer of

Rosneft.  *Id.* ¶¶ 36-44.  Plaintiffs bring two causes of action.  First, they contend that the Penalty

---

[2] The Penalty Notice is attached as Exhibit A to Plaintiffs' Complaint.  Although the Analysis
Memorandum is part of the certified AR, that Record has not yet been lodged with the Court.
OFAC is accordingly filing a copy of the Analysis Memorandum contemporaneously with this
filing.  Because the parties are still conferring about the potential need to redact portions of the
AR in order to protect Plaintiffs' confidential business information, *see* Joint Report Re.
Contents of Status Report Order at 5, ECF No. 18, OFAC is submitting the Analysis
Memorandum under seal.  The citations to the Analysis Memorandum contained throughout this
brief are to the pagination used for the Administrative Record.

Notice is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).  *Id*. ¶¶ 65-68.  Second, Plaintiffs assert that they lacked sufficient notice that the transactions at issue were unlawful and that this alleged lack of notice violated their due process rights.  *Id*. ¶¶ 69-71.

Pursuant to the Court's Scheduling Order for this case, OFAC certified the AR and filed a copy of that certification as well as an index with the Court on November 17, 2017.  *See* Defs.' Notice of Filing of Certification and Index of Admin. R., ECF No. 22.  A copy of the AR was provided to Plaintiffs that same day.  *Id*.  As certified, the AR consists of all non-privileged materials OFAC considered, directly or indirectly, in issuing the Penalty Notice to Plaintiffs.  *See* Certification of Admin. R. ¶ 3, ECF No. 22-1.  These materials include the Penalty Notice, a public web posting about the Penalty Notice, and the Analysis Memorandum and all supporting exhibits; correspondence between OFAC and Plaintiffs for the period of time between the Pre-Penalty Notice and the issuance of the Penalty Notice, as well as all documents submitted by Plaintiffs during this time period; the Pre-Penalty Notice and supporting materials for that notice; communications between OFAC and Plaintiffs prior to the issuance of the Pre-Penalty Notice; materials from OFAC's sanctions programs for Zimbabwe and Burma that were considered by OFAC; other correspondence between OFAC and Plaintiffs; and the materials provided by Plaintiffs in response to OFAC's administrative subpoena.  *See* Admin. R. Index, ECF No. 22-2. In total, the AR spans more than 23,000 pages.  *Id*.

## ARGUMENT

Plaintiffs' motion effectively seeks three forms of relief.  First, Plaintiffs request that the Court order OFAC to include privileged materials, including pre-decisional agency deliberations, in the AR, notwithstanding clear case law that an agency's decision must be evaluated on the basis of its stated reasons, not internal discussions.  Second, Plaintiffs contend that OFAC must

7

include certain categories of documents in the AR, based on their speculation that these

documents do in fact exist and were considered by OFAC in issuing the Penalty Notice and even

though the explanatory materials they seek are already part of the AR.  Third, Plaintiffs ask that

the Court compel OFAC to produce a log of privileged materials, despite the fact that privileged

information is not part of an administrative record and cannot be a basis for evaluating an

agency's decision.  All three requests should be denied.

**A.      Privileged materials are not part of the AR**

Plaintiffs first contend in Points I(A) and (B) of their motion that the certified AR in this

case is incomplete because it does not include privileged materials, and they seek an order

requiring OFAC to include any such documents in the AR.  As Plaintiffs correctly note, OFAC

has certified a record in this case that includes all of the non-privileged documents considered,

directly or indirectly, in OFAC's issuing a Penalty Notice to Plaintiffs for violating the URSR.

*See* Cert. of Admin. R. ¶ 3, ECF No. 22-1.  But Plaintiffs are incorrect to conclude that OFAC's

exclusion of privileged documents in any way undermines the completeness of the AR.

Consistent with the limited scope of review in APA cases, courts have long held that the

administrative record does not include privileged materials, including agency deliberations and

other pre-decisional documents.  As a general matter, "judicial review of agency action is limited

to review of the record on which the administrative decision was based." *Thompson v. Dep't of

Labor*, 885 F.2d 551, 555 (9th Cir. 1989).  The administrative record for a challenged agency

action consists of "all documents and materials directly or indirectly considered by agency

decision-makers." *Id*. (emphasis omitted).  But that description refers to materials of the sort

considered to be part of a record in, for example, an adjudicatory proceeding, such as evidentiary

materials and submissions by parties. *See* 5 U.S.C. § 556(e).  The mere fact that privileged

materials, including internal memoranda and emails from agency staff, might have been

generated in the agency's decision-making process, does not transform those materials into

documents that were before the agency in any relevant sense and therefore make them be part of

the record.

Instead, the scope of the administrative record is bound by the limited nature of review in

challenges to an agency's final action. Consistent with principles of administrative review, an

agency action is to be judged only on the basis of the agency's stated reasons for its decision.

*See, e.g.*, *State Farm*, 463 U.S. at 50 ("It is well-established that an agency's action must be

upheld, if at all, on the basis articulated by the agency itself."); *see also In re Subpoena Duces*

*Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998)

(explaining that when a party challenges agency action as arbitrary and capricious, the

reasonableness of the agency's action "is judged in accordance with its stated reasons"). It is

"not the function of the court to probe the mental processes" of the agency. *Morgan v. United*

*States*, 304 U.S. 1, 18 (1938) ("Morgan I"), *rehearing denied*, 304 U.S. 1 (1938); *see also United*

*States v. Morgan*, 313 U.S. 409, 422 (1941) ("Morgan II") ("Just as a judge cannot be subjected

to such a scrutiny . . . so the integrity of the administrative process must be equally respected.")

(internal citation omitted). Accordingly, "such inquiry into the mental processes of

administrative decisionmakers is usually to be avoided." *Citizens to Pres. Overton Park, Inc. v.*

*Volpe*, 401 U.S. 402, 420 (1971). Inclusion of deliberative and other privileged material in the

administrative record, moreover, would have the additional deleterious effect of precluding

"uninhibited and frank discussion of legal and policy matters." *Tafas v. Dudas*, 530 F. Supp. 2d

786, 794 (E.D. Va. 2008) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975));

*see also San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26,

9

45 (D.C. Cir. 1986) (holding that cases examining the deliberations of an agency "must be the

rare exception if agencies are to engage in uninhibited and frank discussions during their

deliberations").  For these reasons, where, as here, administrative findings are made at the time

of the decision and have been included in the administrative record, "there must be a strong

showing of bad faith or improper behavior before such inquiry may be made."  *Overton Park*,

401 U.S. at 420.  Absent such a showing, review of agency action is confined to "a judgment

upon the validity of the grounds upon which the [agency] itself based its action."  *SEC v.

Chenery Corp.*, 318 U.S. 80, 88 (1943).

The conclusion that deliberative materials fall outside the scope of an administrative

record is further buttressed by the Federal Rules of Appellate Procedure.  When an agency's

decision is subject to direct review in a federal appellate court, Rule 16 of the Rules expressly

limits the scope of the record to "(1) the order involved; (2) any findings or report on which it is

based; and (3) the pleadings, evidence, and other parts of the proceedings before the agency."

Fed. R. App. P. 16.  The advisory committee that adopted the rule in 1967 explained in the

accompanying note that "[t]he record in agency cases is thus the same as that in appeals from the

district court—the original papers, transcripts, and exhibits in the proceeding below."  *Id.*  As

normally construed, the record "in appeals from the district court" would include the materials

submitted to the court by the parties, the transcripts of the court's proceedings, and the orders

issued by the court. By contrast, the record on appeal would *not* include deliberative materials

prepared within the chambers, such as bench memos and recommendations provided to the

presiding judge by law clerks, or preliminary drafts of opinions and orders.  As the committee

note indicates, the administrative record in agency review cases is subject to the same

limitations.  *See also Chekcosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994) (Randolph, J.)

("Agency opinions, like judicial opinions, speak for themselves.  And agency deliberations, like judicial deliberations, are for similar reasons privileged from discovery.").

Plaintiffs' reference to a "highly sanitized final memoranda" in the AR, *see* Mem. of Law in Support of Pls.' Mot. to Compel Completion of the Admin. R. ("Pls.' Mot.") at 10, ECF No. 24, misunderstands the essential nature of APA review.  It is simply incorrect to suggest that there exists a separate memorandum containing the full details of OFAC's analysis and that OFAC included only a more limited version in the AR.  To the contrary, the Penalty Notice and Analysis Memorandum in the AR constitute thorough, contemporaneous explanations of OFAC's reasons for its final decision, and they reflect OFAC's comprehensively stated basis for its final decision, including a point-by-point response to arguments raised by Plaintiffs during the civil penalty process.  The legality of OFAC's decision must be determined based on this document, as well as those others included in the AR, not on agency deliberations and other pre-decisional documents generated in the decisional process.  *See State Farm*, 463 U.S. at 50 ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.").  To do otherwise would be to turn APA review on its head by binding the agency to statements and drafts made in deliberations prior to the agency reaching its final decision.

Moreover, draft documents, internal OFAC discussions, and other deliberative materials are of dubious relevancy in this case.  As characterized by Plaintiffs, their claims hinge on two issues:  (1) the extent to which the Penalty Notice conflicts with the plain language of the URSR as well as the press statements from the White House and the Department of the Treasury and (2) whether OFAC provided sufficient notice of the conduct that would be deemed unlawful. *See* Joint Report Regarding Contents of Status Report Order ¶ 1(a), ECF No. 18; *see also* Compl.

¶ 61 (alleging that "OFAC's interpretation of Executive Order 13,661, as reflected in the Penalty Notice, is broader than, and plainly inconsistent with, the executive order itself and the authoritative guidance issued by the White House and Treasury"), ¶ 62 ("OFAC's interpretation of Executive Order 13,661 draws arbitrary and capricious distinctions between conduct that it now contends is proscribed and . . . conduct that is permitted and that it has affirmed is perfectly lawful . . . ."), ¶ 63 ("OFAC seeks to retroactively enforce a new interpretation of an executive order that is inconsistent with the explicit and unambiguous guidance from the White House and Treasury issued before the relevant conduct . . . .").  Absent from Plaintiffs' motion is an explanation as to why OFAC's pre-decisional deliberations are necessary to resolve either of these legal issues.  Indeed, Plaintiffs here enjoyed the benefit of an extensive administrative process, with advance notice of what the agency proposed, reasons supporting the proposed course, and the opportunity to respond in writing and in person—all in advance of the agency's final action.

Lastly, Plaintiffs' reliance on unpublished decisions from outside of this circuit does not compel the conclusion that OFAC must include privileged materials in the AR.  In two of those cases, the court's order concerning the scope of the administrative record has been stayed pending appellate review.  *See Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, Order Grant. Mot. to Stay Pending Review of Mandamus Pet., ECF No. 108 (N.D. Cal. May 3, 2017); *Batalla Vidal v. Nielsen*, 1:17-cv-05228-NGG-JO, Mem. and Order, ECF No. 198 (E.D.N.Y. Jan. 8, 2018) (granting motion to certify prior memorandum and order for interlocutory appeal and staying discovery and record supplementation).  The third case cited by Plaintiffs, *City of Laguna Nigel v. FEMA* from the Central District of California, appears to be an outlier.  Courts in that district routinely conclude—and as recently as January 3, 2018—that privileged materials

are properly excluded from an administrative record and that no privilege log for such documents is required. *See, e.g.*, *Asse Int'l Inc. v. Kerry*, 8:14-cv-00534-CJC-JPR, Order Deny. Pls.' Mot. to Enforce Compl. with the Court's June 21, 2017, Order, ECF No. 111 (C.D. Cal. Jan. 3, 2018), at 5 ("[P]rivileged materials are not part of the administrative record in the first instance."). Simply put, Plaintiffs have identified no case that would require the inclusion of deliberative materials in an administrative record as a routine matter, and the weight of the case law overwhelmingly favors the opposite result.  Plaintiffs' request for an order requiring OFAC to include deliberative documents should therefore be denied.

**B.      The certified Administrative Record is complete**

In addition to claiming that the AR should include deliberative, pre-decisional materials, Plaintiffs contend that the AR is incomplete because it purportedly lacks three categories of documents Plaintiffs believe to exist:  (1) documents reflecting OFAC's contemporaneous interpretation of the URSR, (2) documents reflecting OFAC's contemporaneous understanding of press statements from the White House concerning the Ukraine-related sanctions program, and (3) documents reflecting OFAC's view about the precedential value of agency decisions made in the context of  other sanctions programs.

In contrast to Plaintiffs' suggestion that something underhanded is afoot, OFAC's AR included explanations and bases for its actions and all countervailing materials submitted by Plaintiffs, and followed the enforcement process detailed by OFAC's regulations.  As with any administrative action, an agency's compilation and certification of an administrative record is entitled to a presumption of regularity.  *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 739-40 (10th Cir. 1993).  Courts must apply this presumption absent clear evidence that the agency acted improperly.  *Id.*; *see also Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174

(2004) (holding that, where the presumption of regularity is applicable, "clear evidence is usually

required to displace it"), *rehearing denied*, 541 U.S. 1057 (2004).  Under this standard, simply

"theorizing" that documents "may" exist is insufficient; a party seeking to add documents to the

administrative record must provide "specific evidence" that a document did in fact exist and was

relied upon by the agency.[3]  *See Tafas*, 530 F. Supp. 2d at 796.

Plaintiffs' motion falls short of this standard.  First, to the extent these documents exist,

they are deliberative and therefore are not part of the AR, for the reasons discussed above.

Second, Plaintiffs have not pointed to any specific evidence that non-deliberative documents

exist and were considered by the agency.  To the contrary, OFAC's analysis of the various issues

raised by Plaintiffs is already included in the AR.[4]

1.   Documents reflecting OFAC's interpretation of the URSR

First, Plaintiffs claim that the AR lacks documents reflecting "how and when" OFAC

reached the conclusions contained in the Penalty Notice to Plaintiffs.  This contention is

incorrect for multiple reasons.

---

[3] Plaintiffs cite *City of Dallas v. Hall* for the proposition that they need only identify a "reasonable basis" to believe that the AR is incomplete.  That case concerned a challenge brought under the National Environmental Protection Act ("NEPA"), the type of case in which courts "routinely look outside the record when reviewing agency compliance."  *City of Dallas*, Civil Action Nos. 3:07-CV-0060-P; 3:07-CV-0213-P, 2007 WL 3257188, at *6 (N.D. Tex. Oct. 29, 2007).  In any event, the court in *City of Dallas* made clear that a party alleging that an administrative record is incomplete "must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record."  *Id.* at *8.  For the reasons discussed throughout, Plaintiffs' contentions do not rise above the level of speculation.

[4] Moreover, Plaintiffs' protestations about the incompleteness of the record make little sense given that OFAC's defense is cabined by the Administrative Record; a court cannot rule in an agency's favor on the basis of material that is not part of the administrative record.  Plaintiffs' arguments not only assume the existence of other records, with no support, but also doubly assume that these non-existent records would be helpful to their case.  The Court should not countenance such speculation and guesswork.

To the extent Plaintiffs believe there to be a lack of explanation about why OFAC concluded that Plaintiffs dealing in the services of a designated person were prohibited under the URSR, and that this view was consistent with the agency's long-standing interpretation, such explanation is contained in the Penalty Notice and Analysis Memorandum, both of which are included in the AR.  In the Analysis Memorandum, for instance, OFAC discussed at length why its interpretation of the URSR was consistent with past precedent, including agency programs involving Burma and Zimbabwe.[5]  *See* Exxon_00000029-30.  Copies of pertinent documents from those programs that were considered by OFAC in issuing the Penalty Notice were similarly included in the AR, *see* Admin. R. Index at 3, and were either available to the public or provided to Plaintiffs prior to the issuance of the Penalty Notice.  Plaintiffs may disagree with the agency's reasoning concerning its interpretation of the URSR, but any such disagreement concerns the merits of their claims in this case, not the sufficiency of the AR.  These documents reflect OFAC's bases for its interpretation of the governing law and application to the facts of Plaintiffs' conduct, and the reasoning contained therein should be the focus of this Court's review.

Plaintiffs' argument in this regard also appears to misunderstand the nature of the civil penalty process by suggesting that OFAC should have reached legal conclusions about the permissibility of and appropriate enforcement response to Plaintiffs' transactions with a designated individual prior to the conclusion of that process.  Plaintiffs, for instance, complain that an OFAC investigator informed Plaintiffs in June 2014—one month after the execution of documents between Plaintiffs and Sechin and more than one year before OFAC issued the Pre-

---

[5] Plaintiffs themselves implicitly acknowledge that OFAC had public precedent, by seeking more information about the pre-existing frequently asked question (FAQ) in the Burma sanctions program related to signing contracts with designated persons.  *See, e.g.* Pls.' Mot. at 15.

Penalty Notice to Plaintiffs—of the fact that the agency was still assessing the legality of Plaintiffs' conduct, as if to suggest that OFAC should have reached its final decision at the early stage of the process before Plaintiffs had responded to OFAC's subpoena and before OFAC had an opportunity to review materials produced by Plaintiffs.  But consistent with the civil penalty process, OFAC first engages in a review of the facts and circumstances of a potential violation and, takes further action where it has a reasonable belief that a violation occurred.  *See* 31 C.F.R. Part 501 App. A(V)(A)(1).  Only after several more steps in the process, including the issuing of a Pre-Penalty Notice and analyzing the alleged violator's response to the Notice, will OFAC make a final determination about particular conduct by issuing a Penalty Notice.  *Id*. App. A(V)(A)(5).  Were OFAC to do differently, the agency would foreclose its ability to receive and consider the factual basis underlying whether a violation occurred, as well as potentially exculpatory evidence, such as the evidence and arguments presented by Plaintiffs following OFAC's issuance of the Pre-Penalty Notice.  Such a result could be inconsistent not only with OFAC's own regulations but also principles of due process and presumably would not be a process that would be welcomed by Plaintiffs or any other possible recipient of an enforcement penalty.

Contrary to Plaintiffs' apparent belief, OFAC scrupulously follows the enforcement process detailed in its regulations.  OFAC does not finalize penalty determinations prior to collecting the relevant facts, or undertake a series of extra-regulatory discrete legal questions on particular issues as part of the civil penalty process.  The reasoning about "how and when" OFAC reached its determination as to the legality of Plaintiffs' conduct, as well as OFAC's consideration of the facts and arguments Plaintiffs brought to its attention in response to the Pre-Penalty Notice, is thus contained in that Penalty Notice, as well as in the Analysis Memorandum

and Pre-Penalty Notice, all of which have been included in the AR.  Other non-deliberative

documents reflecting OFAC's view of the legality of Plaintiffs' conduct simply do not exist.

     2.    <u>Documents reflecting OFAC's understanding of White House press statements</u>

Second, Plaintiffs assert that the AR is incomplete because it lacks OFAC's

contemporaneous understanding of two press statements from the White House in 2014.

According to Plaintiffs, because they perceive there to have been a conflict between the press

statements and OFAC's interpretation of the regulations, there must also exist other

documentation in which OFAC discussed and analyzed the White House guidance, and these

documents must be included in the AR.  Here, too, Plaintiffs have offered nothing more than

speculation, based solely on their cherry-picking of phrases from press releases, that any such

non-privileged documents were created, and their argument should be rejected on this basis

alone.

Plaintiffs' argument suffers from a presumption that there existed an inconsistency

between the press statements and OFAC's position.  But as explained in OFAC's Analysis

Memorandum, OFAC relied on the plain language of the publicly-available Executive Order and

the URSR. *See* Exxon_00000025-26.  The Analysis Memorandum further explained that the

White House press releases identified by Plaintiffs do not contradict the agency's approach but

instead "provide context for the policy rationale" at the time the U.S. Government sought to

isolate designated officials but not the companies they managed.  *See* Exxon_00000025.  Both

press releases, as well as the press release from the Department of the Treasury issued on the

date of Sechin's designation and not mentioned by Plaintiffs, directly state that U.S. businesses

are prohibited from transactions with such designated persons.  *Id.*  And none of the press

17

releases makes any mention of a carve-out for doing business with targeted individuals in their professional, as opposed to personal capacity. *Id.*

OFAC's Analysis Memorandum further notes that, even if the White House press statements could be construed as being contrary to the agency's position, such statements are not generally considered to carry the force of law regarding OFAC's interpretation of its regulations. *Id.* The Memorandum goes on to note that Plaintiffs' construction of the press statements contradicts the plain language of the URSR and the Executive Order, and OFAC issued its own guidance subsequent to the press statements that Plaintiffs failed to consider. *Id.*; *see also id.* at Exxon_00000029-33 (further responding to Plaintiffs' claim that they reasonably relied on various news articles and press statements). Far from lacking in explanation, both the Penalty Notice and Analysis Memorandum contain OFAC's thorough analysis of its interpretation of Plaintiffs' conduct vis-à-vis the press statements. These stated reasons are those upon which the legality of OFAC's Penalty Notice should be evaluated. *See State Farm*, 463 U.S. at 50.

   3. <u>Documents reflecting OFAC's policy on cross-sanctions guidance</u>

Third and finally, Plaintiffs contend that the AR is lacking in documents reflecting OFAC analysis regarding its reliance on guidance from other sanctions program and is thus incomplete. Specifically, Plaintiffs contend that OFAC improperly relied on the answer to a frequently asked question (FAQ) from a 2006 sanctions program involving Burma, despite a provision in the URSR that stated that differing foreign policy and national security concerns "may" result in differing interpretations of similar language across programs. *See* Pls.' Mot. at 15 (citing 31 C.F.R. § 589.101). Here, too, Plaintiffs rely solely on speculation that some non-privileged documents must exist and further appear to overlook the agency's reasoning on this point in the Analysis Memorandum and Penalty Notice.

As with Plaintiffs' allegations concerning the White House press statements, the analysis Plaintiffs claim is lacking from the AR is found in the Analysis Memorandum and Penalty Notice. There, in response to Plaintiffs' assertion that the FAQ did not provide adequate notice of OFAC's interpretation of the URSR, OFAC explained that the FAQ "was the only OFAC public guidance with analogous factual circumstances to ExxonMobil's, and addressed those facts much more directly than" other materials relied upon by Plaintiffs, such as certain segments of the White House press statements cited by Plaintiffs. Exxon_00000033. The Analysis Memorandum goes on to note that, particularly given the plain language of the URSR, the FAQ highlighted the point that any dealings with a designated person were prohibited and that, once Sechin was designated, Plaintiffs were "broadly prohibited from engaging in any transaction with him." *Id*. And as the Analysis Memorandum points out, to the extent there was any doubt on the part of Exxon about the applicability of the FAQ to the URSR, it could have sought guidance from OFAC through various means, though it failed to do so. *Id*.

The Analysis Memorandum also responds to Plaintiffs' complaints about 31 C.F.R. § 589.101. That provision, which is part of the URSR, concerns the relation of the URSR to other laws and regulations administered by OFAC and makes clear that the URSR are generally independent of other sanctions programs. The provision relied upon by Plaintiffs states that "[d]iffering foreign policy and national security circumstances *may* result in differing interpretations of similar language among the parts of this chapter," § 589.101 (emphasis added), which Plaintiffs have interpreted to mean that prior guidance from other programs have no bearing on OFAC's analysis of a separate program. Responding to Plaintiffs' concerns, OFAC reasoned in the Analysis Memorandum that the regulation states only that interpretations of similar language "may" vary across programs due to foreign policy and national security

concerns and that the regulation does not state that the agency's interpretations will in fact be different.  *See* Exxon_00000033.  The Analysis Memorandum points out that, at a minimum, the FAQ and the URSR combined provided a sophisticated entity like Exxon with notice of the possibility that OFAC could or would use the same interpretation in multiple programs.  *Id.*  As with the other two purported insufficiencies with the AR identified by Plaintiffs, there simply are no other non-privileged documents outside of the AR reflecting OFAC's views on these issues.

In sum, the Court is not being asked to assess the wisdom of the agency's reasoning at this stage of the case; rather, Plaintiffs' motion raises the limited question of whether the AR as submitted by OFAC sufficiently explains the agency's reasons for making the final decision that it did and provides a path for the Court (and Plaintiffs) to discern the agency's reasoning.  *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (holding that courts should uphold an agency decision so long as "the agency's path may reasonably be discerned").  Because OFAC's basis for its action is set forth fully in the Analysis Memorandum (as well as other documents in the AR) and because no other non-privileged documents exist upon which the agency relied, the Court should reject Plaintiffs' contention that the AR is incomplete.

## C.      OFAC is not required to produce a privilege log

Along with requesting the inclusion of certain documents in the Administrative Record, Plaintiffs seek to compel OFAC to produce a log of privileged documents.  The Court should also reject this request.

Because privileged documents are not considered to be part of an administrative record, *see Checkosky*, 23 F.3d at 489, an agency has no obligation to account for those materials in a privilege log.  Although courts within the Fifth Circuit have not had the occasion to address squarely this issue, district courts within the D.C. Circuit—where APA review is prevalent—

have uniformly rejected efforts by plaintiffs to require a log specifically identifying privileged

materials withheld from the AR.[6]  *See, e.g., Am. Petroleum Tankers Parent, LLC v. United*

*States*, 952 F. Supp. 2d 252, 265 (D.D.C. 2013) ("As a corollary to th[e] principle [that

privileged materials are not part of the administrative record], the agency need not provide a

privilege log of the documents withheld pursuant to the privilege."); *Dist. Hosp. Partners, L.P. v.*

*Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013) ("[P]redecisional and deliberative documents are

not part of the administrative record to begin with, so they do not need to be logged as withheld

from the administrative record.") (internal citation omitted), *aff'd*, 786 F.3d 46 (D.C. Cir. 2015);

*Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 53 (D.D.C. 2009) ("Since deliberative documents are

not part of the administrative record, an agency that withholds [them] is not required to produce

a privilege log to describe the documents that have been withheld.") (collecting cases), *rev'd on*

*other grounds*, 670 F.3d 1238 (D.C. Cir. 2011); *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d

366, 372 n.4 (D.D.C. 2007) ("Blue Ocean criticizes NMFS for not claiming this privilege or

filing a privilege log.  But, it is unfair to criticize NMFS for not claiming a privilege and filing a

privilege log as to documents that it claims should not be in the administrative record in the first

place."); *see also Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947)

("[I]nternal memoranda made during the decisional process [] are never included in a record.").

Furthermore, several district courts in multiple other jurisdictions have done the same.

*See, e.g.*, *California v. U.S. Dep't of Labor*, No. 2:13-cv-02069-KJM-DAD, 2014 WL 1665290,

at *13-14 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly

---

[6] In light of the uniform position taken by district courts in D.C, Plaintiffs' reliance on a (non-APA) D.D.C. case for the suggestion that "the [G]overnment may be deemed to have waived its right to assert the deliberative process privilege" should it fail to provide a log, *see* Pls.' Mot. at 18, is meritless.

excluded from the administrative record, the agency need not provide a privilege log."); *Tafas*, 530 F. Supp. 2d at 801 (E.D. Va. 2008) ("[T]he USPTO argues, and the Court agrees, that [] internal emails, correspondence, summaries, and drafts that [plaintiff] seeks are not properly part of the administrative record in the first place."); *Great Am. Ins. Co. v. United States*, No. 12 C 9718, 2013 WL 4506929, at *8-*9 (N.D. Ill. Aug. 23, 2013) ("[R]equiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's predecisional process and potentially undermine the limited nature of review available under the APA.").

Plaintiffs' argument to the contrary is based on a handful of district court cases that are either from outside of this circuit or that present a procedural posture significantly different than the present case.  The two cases from this district to which Plaintiffs cite, *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26 (N.D. Tex. 1981) and *Texas Steel Co. v. Donovan*, 93 F.R.D. 619 (N.D. Tex. 1982) both involved discussion of the need for a privilege log in the limited circumstances where the record submitted by the agency was inadequate to explain the agency's reasoning and discovery was necessary.  In *Exxon*, the court concluded that incompleteness of the record was "evident from the record's face," given that the agency had compiled only 126 pages worth of material and had omitted multiple documents that the agency had identified elsewhere as having been considered in reaching the challenged decision.  *See Exxon Corp.*, 91 F.R.D. at 34.  Similarly, the court in *Texas Steel* observed, as a hypothetical matter, that should the plaintiff prevail in demonstrating the existence of one of the exceptions to the presumption of no discovery in APA cases, then the government would bear the burden of making and proving a claim of privilege.  *See Tex. Steel Co.*, 93 F.R.D. at 621.  At no point did the *Texas Steel* court conclude that discovery was in fact warranted or suggest that a privilege log

22

was required for materials not included in the administrative record in the regular course. *Id.*

The instant case presents a scenario markedly different than either *Exxon Corp.* or *Texas Steel*:

unlike the insufficient records discussed in those cases, OFAC's AR here is fulsome, consisting

of more than 23,000 pages, including a 30-page, single-spaced Analysis Memorandum

explaining the reasoning for OFAC's decision to issue a Penalty Notice, other documents that

follow the procedures detailed in OFAC's regulations, and numerous materials submitted by

Plaintiffs that were considered by OFAC.  And unlike in *Exxon Corp.*, where the agency

identified certain documents as having been considered but then excluded them from the

administrative record, no such omissions have been made here.  The privilege log discussions

from both *Exxon Corp.* and *Texas Steel* are accordingly inapposite to this case.

Plaintiffs' reliance on out-of-circuit case law similarly provides no basis for this Court to

compel the production of a privilege log.  Several of the cases cited by Plaintiffs were decided in

the Northern District of California, which appears to be the only district court that, as a matter of

course, requires the Government to identify and describe deliberative materials withheld from

the AR.  *See, e.g.*, *Inst. for Fisheries*, 2017 WL 89003 at *1.  The Government has recently filed

petitions for appellate review from two privilege log decisions from that district, and both of

those decisions have either been stayed on appeal, *see id.*, 17-cv-1574-VC, Order Grant. Mot. to

Stay Pending Review of Mandamus Pet., ECF No. 108 (N.D. Cal. May 3, 2017), or vacated, *see*

*In re United States*, 138 S. Ct. 443 (2017) (per curiam) (vacating Ninth Circuit's denial of a

petition for a writ of mandamus arising from now-stayed district court order that the Government

provide plaintiff with deliberative materials as part of an administrative record prior to resolution

of motion to dismiss based on threshold defenses).  As noted above, the privilege log decision in

*Battala Vidal* cited by Plaintiffs has likewise been stayed pending appeal.  *See id.*, 1:17-cv-

05228-NGG-JO, Mem. and Order, ECF No. 198 (E.D.N.Y. Jan. 8, 2018) (granting motion to certify prior memorandum and order for interlocutory appeal and staying discovery and record supplementation).  In any event, the substantial body of case law elsewhere aligns with the Supreme Court's teachings on the nature of the administrative record and judicial review in APA cases.  On the basis of that precedent and reasoning, the proper view is that the government is not required to produce a privilege log for material that is not part of the administrative record in the first instance.

Plaintiffs' assertions to the contrary notwithstanding, *see* Pls.' Mot. at 16 ("Defendants have claimed that they, unlike all other litigants, need not and will not provide a log for documents withheld from the administrative record on the basis of privilege."), OFAC does not seek special accommodation as a party to civil litigation.  Rather, consistent with long-standing record-review principles in APA cases, OFAC has properly excluded pre-decisional and other deliberative materials from the AR in this case.  Because OFAC's final decision at issue in this case must be judged based on the agency's stated reasons, such pre-decisional documents and analysis are not pertinent to deciding whether OFAC's final decision was arbitrary and capricious.  And because these documents are not part of the AR for that decision, OFAC simply is not required to account for these materials in a privilege log.  Plaintiffs' request that the Court require OFAC to do otherwise should therefore be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be denied.


DATED:  January 18, 2018          Respectfully submitted,

                                  CHAD A. READLER
                                  Acting Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director,
Federal Programs Branch

*s/ Nathan M. Swinton*
NATHAN M. SWINTON
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 305-7667
Fax: (202) 616-8470
Email:  Nathan.M.Swinton@usdoj.gov

Attorneys for Defendants

**Certificate of Service**

On January 18, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ *Nathan M. Swinton*
Nathan M. Swinton
Senior Trial Counsel